**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JAMES BOOKMAN,<br>KASHMIR PETERSON,<br>RAMZAN ALLI,<br>LANCE PREDMORE,<br>CHARLES SMITH,<br>TAHIR YOUNG,<br>BRUCE FREIMOUR,<br>JOHN ROSEBORO,<br>GIB BROWN,<br>DENNIS TOBIN,<br>DWIGHT McDONALD,<br>NICOLE LAWTONE-BOWLES,<br>MARVIN SMITH,<br><br>　　　　Plaintiffs,<br>vs.<br><br>THE CITY OF NEW YORK,<br><br>　　　　Defendant. | Case No. _____<br><br>(Jury Trial Demanded) |

**COMPLAINT**

**INTRODUCTION**

Plaintiffs, by and through their counsel, the law firms of Woodley & McGillivary LLP, and Spivak Lipton LLP, for their complaint against the City of New York ("New York City"), state as follows:

**PARTIES**

1. Plaintiffs have given their written consent to be party plaintiffs in this action pursuant to 29 U.S.C. § 216(b). Such written consents are appended to this Complaint in the attached Exhibit A. These written consent forms set forth each plaintiff's name and address. They bring this action as a collective action in accordance with 29 U.S.C. § 216(b) of the Fair

Labor Standards Act (FLSA) against the defendant, because of defendant's unlawful deprivation of plaintiffs' rights to overtime compensation paid in accordance with the FLSA.

2. Defendant New York City is, among other things, a juridical entity amenable to suit under the FLSA in that it is, and was at all times material hereto, a public agency within the meaning of Section 3(x) of the FLSA, 29 U.S.C. § 203(x). New York City has a principal office and place of business located at Broadway and Park Row, New York, New York, 10007, and may be served with process by serving the Office of Corporation Counsel, 100 Church Street, New York, 10007.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391.

## FACTS

5. Plaintiffs are, and at all times material herein have been, employed by the Department of Homeless Services ("DHS"), City of New York, as Motor Vehicle Operators ("MVO").

6. At all times material herein, plaintiffs James Bookman, Bruce Freimour, Dwight McDonald and Marvin Smith have worked at the DHS facility, Barbara S. Kleinman Shelter, located at 300 Skillman Ave., Brooklyn, New York, 11211. At all times material herein, plaintiffs Kashmir Peterson, Ramzan Alli, Lance Predmore, Charles Smith, Tahir Young, John Roseboro, Gib Brown, Dennis Tobin and Nicole Lawtone-Bowles have worked at the DHS facility, Prevention Assistance and Temporary Housing ("PATH"), located at 151 E. 151st St., Bronx, NY, 10451.

7.	Plaintiffs bring this action for a declaratory judgment, back pay and other relief pursuant to 29 U.S.C. § 207, 29 U.S.C. § 216(b), and 28 U.S.C. § 1331 to remedy the defendant's willful and unlawful violations of federal law complained of herein.

8.	Each of the plaintiffs in this action while employed by defendant has been an "employee" within the meaning of the FLSA. 29 U.S.C. § 203(e)(1).

9.	Within the last three years and continuing to date, while working in the position of MVO on behalf of defendant City of New York, plaintiffs Bookman, Peterson, Alli, Predmore, C. Smith, Young, Freimour, Roseboro, Brown, Tobin, McDonald, Lawtone-Bowles and M. Smith's duties include but are not limited to: transporting homeless individuals and families to temporary housing placements, train stations and airports in all five boroughs, as well as various other duties and activities related to serving the citizens of New York City, including transporting DHS employees between DHS facilities.

10.	While working as MVOs, the plaintiffs routinely work over 40 hours a week and do not receive overtime compensation at the rate of one and one-half times their regular rate of pay for all hours worked over 40 in a week.  As described in further detail below, the plaintiffs frequently work outside of their regularly scheduled shift and receive payment for overtime hours which were pre-approved before they were worked, but the City systemically fails to pay plaintiffs for this overtime work at the correct regular rate of pay and in timely manner.

11.	The defendant captures the work hours of MVOs, including time spent working before their shift begins and after the end of their scheduled shift, on the defendant's timekeeping system, "CityTime," which is maintained at most but not all of the MVOs work locations. CityTime, which is maintained by the defendant, tracks plaintiffs' worktime by the minute.

3

12. Plaintiffs' payroll data is in defendant's exclusive possession and is not readily available to plaintiffs. Specifically, as Judge Castel recently explained in *Murray, et al. v. City of New York*, No. 1:16-cv-08072-PKC, a case that involves employees of defendant who also work at DHS, plaintiffs' payroll data is not readily available to plaintiffs because it "is maintained across various DHS branches, not available for download or electronic transfer, not text-searchable, not maintained for more than two years, and requires a separate search for each pay period." *Murray,* No. 1:16-cv-08072, Dkt. 66 at 3. Nonetheless, plaintiffs were provided with payroll information by the City for the time period between June 2, 2013, and October 14, 2017, in a computer manipulable format that permitted plaintiffs' counsel to analyze the information and provide the evidence of the FLSA violations set forth in the attachments to this Complaint.

### *Uncompensated Pre-shift, Post-shift and Meal Period Work Performed by Plaintiffs Bookman and Peterson*

13. While working as MVOs, plaintiffs Bookman and Peterson routinely work over 40 hours a week.  MVOs are scheduled for 5 shifts of 8 hours and 30 minutes in length each week. Each day, 30 minutes is automatically deducted for uncompensated meal periods. Thus, plaintiffs Bookman and Peterson are scheduled to perform a minimum of 40 hours of work per week. However, they frequently work overtime in addition to their regular 40 hours of work per week: They work overtime on their scheduled work days and weekends; they also frequently work through their unpaid meal periods without compensation; and, in addition, they frequently work additional hours before the official start time and after the official end time of their regularly scheduled shifts. Each of these work activities, alone, causes plaintiffs to work in excess of 40 hours in each week that they perform duties outside of their regularly

scheduled shifts. Thus, plaintiffs Bookman and Peterson regularly work these additional uncompensated hours in workweeks in which they work over 40 hours.

14. MVO plaintiffs Bookman and Peterson begin work before the official start time of their shifts and perform pre-shift activities, including but not limited to the tasks listed in Paragraph 9 as well as preparing for their shift by retrieving equipment and vehicle keys, walking to the parking garage to retrieve the vehicle, cleaning the vehicle and taking the vehicle for repairs, for which they are not compensated.

15. MVO plaintiffs Bookman and Peterson also work through their 30-minute meal periods performing the tasks listed in Paragraph 9 for which they are not compensated, such as transporting families and individuals to various locations.

16. MVO plaintiffs Bookman and Peterson also are not compensated for time that they perform post-shift activities, including but not limited to the tasks listed in paragraph 9, as well as transporting families and individuals, solving problems with placement sites, helping families unload their luggage, driving through heavy traffic, refilling the vehicle's fuel tank, cleaning the vehicle, returning the vehicle to the parking garage, finalizing trip sheets and submitting receipts, after the end of their shifts. Thus, plaintiffs work over 40 hours in all workweeks in which they perform any of this uncompensated work.

17. For example, plaintiff Bookman routinely works over 40 hours in a workweek. When plaintiff Bookman works over 40 hours, defendant fails to compensate him for work, including but not limited to when he is performing tasks enumerated in paragraphs 9, 15, 16 and 17 before the official time his shift begins, after the official time his shift ends, and during his meal periods. Plaintiff Bookman is regularly scheduled to work from 4:00 PM until 12:30 AM, Monday through Friday. He arrives and begins working approximately 30 to 40

minutes before the start of every shift. During this time, he prepares for his shift by retrieving equipment for his work vehicle and retrieving the work vehicle keys. Plaintiff Bookman also works after the end of his shift. During this time, he is still transporting families and individuals to placement sites. Plaintiff Bookman must continue to work past the time his shift time ends when, for example, there is a lot of traffic, there is a problem with the placement site, or the family has a lot of luggage to unload. Plaintiff Bookman also refills the vehicle's fuel tank, cleans the vehicle and returns the vehicle to the parking garage after the official end time for his shift. Once plaintiff Bookman arrives at Barbara Kleinman Shelter, he organizes receipts and finalizes his trip log before he clocks out. When plaintiff Bookman performs these post-shift activities, it causes him to work in excess of 40 hours per week, for which he is not compensated. Additionally, plaintiff Bookman works through his meal period approximately 4 to 5 times per week, performing the duties listed in paragraphs 9 and 16.

18.     For example, during the workweek ending on October 28, 2017, plaintiff Bookman worked a total of 56 hours and 45 minutes, excluding his meal periods; 3 hours and 15 minutes of this time was uncompensated, although during this recorded work time, plaintiff Bookman performed the work activities identified above. In another example, during the workweek ending on October 7, 2017, plaintiff Bookman worked a total of 73 hours and 15 minutes, excluding his meal periods; 3 hours of this time was uncompensated although during this recorded work time plaintiff Bookman performed the work activities identified above. During these weeks in which he performed off-the-clock duties, plaintiff Bookman also performed work activities identified above during his meal periods, causing to him to work in excess of 40 hours, for which he received no compensation.

19. For example, plaintiff Peterson routinely works over 40 hours in a workweek. When plaintiff Peterson works over 40 hours, defendant fails to compensate him for work, including but not limited to when he is performing tasks enumerated in paragraphs 9, 15, 16 and 17 before the official time his shift begins, after the official time his shift ends, and during his meal periods. Plaintiff Peterson is regularly scheduled to work from 10:00 AM until 6:30 PM, Monday through Friday. He arrives and begins working approximately 30 minutes before the start of every shift. During this time, he prepares for his shift by retrieving equipment for his work vehicle, retrieving the work vehicle keys, and inspecting and preparing the vehicle for the day. Plaintiff Peterson also continues working after the end of his shift 4 to 5 days per week, for approximately 15 to 30 minutes. During this time, he is still transporting families and individuals to placement sites. Plaintiff Peterson must continue to work past the time his shift time ends when, for example, there is a lot of traffic, there is a problem with the placement site, or the family has a lot of luggage to unload. Plaintiff Peterson also refills the vehicle's fuel tank, cleans the vehicle and returns the vehicle to the parking garage after the official end time of his shift. Once plaintiff Peterson arrives at PATH, he organizes receipts and finalizes his trip log before he clocks out. When plaintiff Peterson performs these post-shift activities, it causes him to work in excess of 40 hours per week, for which he is not compensated. Additionally, plaintiff Peterson works through his meal period approximately 4 to 5 times per week, performing the duties listed in paragraphs 9 and 16.

20. For example, during the workweek ending on January 20, 2018, plaintiff Peterson worked a total of 54 hours, excluding his meal periods; 2 hours of this time was uncompensated, although during this recorded work time, plaintiff Peterson performed the work activities identified above. In another example, during the workweek ending on March

7

24, 2018, plaintiff Peterson worked a total of 67 hours, excluding his meal periods; 1 hour and 30 minutes of this time was uncompensated although during this recorded work time plaintiff Peterson performed the work activities identified above. During these weeks in which he performed off-the-clock duties, plaintiff Peterson also performed work activities identified above during his meal periods, causing to him to work in excess of 40 hours, for which he received no compensation.

### *Night Shift Differential, Meal Allowance, Vehicle Differential and the Rate at Which Overtime is Paid to Plaintiffs Bookman, Peterson, Alli and Predmore*

21.  Plaintiffs Bookman, Peterson, Alli, Predmore and all other individuals employed by defendant at DHS in the positions of MVO are paid a night shift differential of ten percent (10%) of their basic rate of pay when they work more than one hour between 6 p.m. and 8 a.m. The night shift differential is taxed as ordinary income to the plaintiffs.

22.  Plaintiffs Bookman, Peterson, Alli, Predmore and all other individuals employed by defendant at DHS in the positions of MVO are provided a shift differential in an amount ranging from $4.89 to $40.46 per shift, when they drive certain commercial vehicles while on duty. The amount varies depending on the type of vehicle they drive. The shift differential for driving certain vehicles is taxed as ordinary income to the plaintiffs.

23.  Plaintiffs Bookman, Peterson, Alli, Predmore and all other individuals employed by defendant at DHS in the positions of MVO are provided a premium payment entitled "meal allowance" in an amount ranging from $8.25 to $12.75, when they work at least 2 consecutive hours of "approved" overtime and are compensated in compensatory time. The amount paid varies with the number of consecutive hours of pre-approved and "authorized overtime" worked. The meal allowance is taxed as ordinary income to the plaintiffs.

24.     During workweeks in which plaintiffs Bookman, Peterson, Alli and Predmore work over 40 hours and are paid a night shift differential for working at least one hour between 6 p.m. and 8 a.m., a shift differential for driving certain vehicles, and/or meal allowance for working at least 2 consecutive hours of "authorized overtime" and are paid in compensatory time, defendant fails to include the night shift differential pay, vehicle differential pay, and/or the meal allowance payment in the calculation of the regular rate of pay for cash overtime payments made to plaintiffs pursuant to a systematic, Agency-wide practice.

25.     Defendant's payroll records demonstrate that plaintiffs Bookman, Peterson, Alli and Predmore earned night shift differentials, vehicle differentials, and/or meal allowance payments during weeks in which they worked over 40 hours, but that these payments were not included in plaintiffs' regular rate of pay for overtime compensation during these workweeks in which the plaintiffs worked over 40 hours. For example, during the pay period ending January 6, 2018, plaintiff Bookman was paid a night shift differential payment, vehicle differential payment and/or a meal allowance payment by defendant, but these payments were not included in the regular rate at which defendant paid him overtime compensation for hours worked over 40 in a workweek during that pay period. During the pay period ending March 3, 2018, plaintiff Peterson was paid a night shift differential payment, vehicle differential payment, and/or a meal allowance payment by defendant, but these payments were not included in the regular rate at which defendant paid him overtime compensation for hours worked over 40 in a workweek during that pay period. During the pay period ending December 19, 2016, plaintiff Alli was paid a night shift differential payment, vehicle differential payment, and/or a meal allowance payment by defendant, but these payments were not included in the regular rate at which defendant paid him overtime compensation for hours worked over 40 in a

workweek during that pay period. During the pay period ending October 29, 2106, plaintiff Predmore was paid a night shift differential payment, vehicle differential payment, and/or a meal allowance payment by defendant, but these payments were not included in the regular rate at which defendant paid him overtime compensation for hours worked over 40 in a workweek during that pay period.

### *Late Payment of Overtime Worked by Plaintiffs Bookman, Peterson, Predmore, C. Smith*

26. When defendant does compensate plaintiffs for hours worked over 40 in a workweek and plaintiffs Bookman, Peterson, Predmore and C. Smith are paid for this overtime work in cash, defendant sometimes delays the payment of overtime beyond the next pay period for which the plaintiffs are paid for their regular work hours. Plaintiffs Bookman, Peterson, Predmore and C. Smith are paid for their regular hours either in the next check immediately received at the end of the pay period or, for the second week of the pay period, two weeks later. However, defendant has delayed the payment of overtime for 2 or more pay periods beyond when the overtime was worked on multiple occasions and beyond the time the plaintiff was paid for his regular work hours. The delay in payment is caused either because the defendant's managerial staff has simply failed to transmit information to payroll that defendant has deemed required to pay overtime to plaintiffs Bookman, Peterson, Predmore and C. Smith, or because defendant simply does not want to incur the cost of paying overtime for budgetary reasons in that particular financial quarter (*e.g.*, when employees' pay exceeds a predetermined cap), and/or for other reasons that are unrelated to defendant's ability to determine the amount of overtime compensation that is owed to the plaintiffs. This delay occurs on a systematic, Agency-wide basis.

27.     Defendant's payroll records demonstrate that there are instances in which plaintiffs Bookman, Peterson, Predmore and C. Smith worked over 40 hours in a workweek and were compensated in cash for this time, but were not promptly compensated for this time. Specifically, payroll records demonstrate that defendant failed to promptly compensate plaintiffs Bookman, Peterson, Predmore and C. Smith in cash for overtime worked over 40 hours in a workweek by failing to compensate plaintiffs until after more than two pay periods[1] of the date the overtime was worked.

28.     For example, plaintiff Bookman worked beyond his regularly scheduled shift during the workweek ending August 12, 2016 and requested to be compensated in cash, but was not paid for this time until more than two pay periods after the overtime was worked. Plaintiff Peterson worked beyond his regularly scheduled shift during the workweek ending June 30, 2017 and requested to be compensated in cash, but was not paid for this time until more than two pay periods after the overtime was worked. For example, plaintiff Predmore worked beyond his regularly scheduled shift during the workweek ending July 9, 2016 and requested to be compensated in cash, but was not paid for this time until more than two pay periods after the overtime was worked. For example, plaintiff C. Smith worked beyond his regularly scheduled shift during the workweek ending May 6, 2017 and requested to be compensated in cash, but was not paid for this time until more than two pay periods after the overtime was worked.

### *Payment of Overtime at the Rate of One Hour for Each Hour of Overtime Worked by Plaintiffs Bookman, Peterson, Brown, Freimour, Lawtone-Bowles, McDonald, Roseboro, M. Smith, Tobin and Young*

29.     During all workweeks in which the plaintiffs Bookman, Peterson, Brown, Freimour, Lawtone-Bowles, McDonald, Roseboro, M. Smith, Tobin and Young work over 40 hours and

---

[1] Each pay period is comprised of two weeks. Two pay periods equals four weeks.

11

some of this time above 40 hours includes what the defendant considers to be "approved overtime" and is classified as "voluntary," plaintiffs can be paid in compensatory time or cash. During the weeks in which plaintiffs Bookman, Peterson, Brown, Freimour, Lawtone-Bowles, McDonald, Roseboro, M. Smith, Tobin and Young work over 40 hours and are compensated for "voluntary" and "approved overtime," plaintiffs are only paid at a straight time rate for each hour of overtime that is worked on a systematic, Agency-wide basis.

30. Defendant also pays plaintiffs Bookman, Peterson, Brown, Freimour, Lawtone-Bowles, McDonald, Roseboro, M. Smith, Tobin and Young in compensatory time in lieu of cash when pre-approved overtime exceeds a budgetary "cap" set by the defendant. When defendant pays plaintiffs in compensatory time for hours worked in excess of the "cap," defendant provides compensatory time at the rate of one hour of compensatory time for each overtime worked in excess of 40 hours a week on a systematic, Agency-wide basis.

31. Defendant's payroll records demonstrate that defendant improperly paid plaintiffs Bookman, Peterson, Brown, Freimour, Lawtone-Bowles, McDonald, Roseboro, M. Smith, Tobin and Young overtime compensation for hours worked over 40 in a workweek at a straight time rate, rather than at the rate of one and one-half times plaintiffs' regular rate of pay for each hour of overtime worked. For example, during the week ending October 14, 2017, plaintiff Bookman worked "voluntary," "approved" overtime over 40 hours in a workweek for which he was compensated at a straight time rate. During the work week ending January 27, 2018, plaintiff Peterson worked "voluntary," "approved" overtime over 40 hours in a workweek for which he was compensated at a straight time rate.

32. Specific instances of the defendant's failure to pay plaintiffs Brown, Freimour, Lawtone-Bowles, McDonald, Roseboro, M. Smith, Tobin and Young overtime at the rate of

12

one and one half times plaintiffs' regular rate of pay for each hour of overtime worked during weeks in which the plaintiffs worked over 40 hours in a workweek and earned overtime, can be determined for the time period of March 2015 until October 14, 2017 from payroll data produced by the defendant, and these specific instances are listed in Exhibit B.

## COUNT I

### FAILURE TO PAY OVERTIME FOR ALL HOURS PLAINTIFFS BOOKMAN AND PETERSON ARE SUFFERED OR PERMITTED TO WORK IN VIOLATION OF SECTION 7(a) OF THE FLSA, 29 U.S.C. § 207(a)

33.   Plaintiffs hereby incorporate by reference paragraphs 1 through 32 in their entirety and restate them herein.

34.   At all times material herein, during those workweeks in which plaintiffs Bookman and Peterson have worked hours in excess of 40 hours a week, they have performed work activities, including but not limited to when they are performing tasks enumerated in paragraphs 9 and 15 through 16, without compensation before the start of their shifts and after the end of their shifts, all of which is recorded on defendant's timekeeping system CityTime. Plaintiffs also have performed work during their meal periods, causing them to work in excess of 40 hours in a given week. Accordingly, as a result of these pay practices, defendant has failed to provide plaintiffs with the rights and protections provided under section 7(a) of the FLSA, 29 U.S.C. § 207(a).

35.   Section 207 of the FLSA requires the payment of overtime compensation to employees who work in excess of the hourly standards set forth therein. In particular, Section 207(a) requires the payment of overtime compensation at the rate of one and one-half times each employee's regular rate of pay for all hours employees are suffered or permitted to work in excess of forty hours per week. Defendant has failed to comply with the overtime pay

13

requirements of the FLSA by failing to compensate plaintiffs Bookman and Peterson for work that they have been suffered or permitted to work before the official start time of their shifts, during their uncompensated meal periods, and after the official end of their shifts.

36. As a result of defendant's willful and purposeful violations of the FLSA, there have become due and owing to the plaintiffs Bookman and Peterson an amount that has not yet been precisely determined. The employment and work records for these plaintiffs are in the exclusive possession, custody and control of the defendant and its public agencies and these plaintiffs are unable to state at this time the exact amount owing to them. Defendant is under a duty imposed by the FLSA, 29 U.S.C. § 211(c), and various other statutory and regulatory provisions, to maintain and preserve payroll and other employment records with respect to these plaintiffs from which the amount of defendant's liability can be ascertained.

37. Pursuant to 29 U.S.C. § 216(b), plaintiffs Bookman and Peterson are entitled to recover liquidated damages in an amount equal to their back pay damages for the defendant's failure to pay overtime compensation.

38. Plaintiffs are entitled to recover attorneys' fees and costs under 29 U.S.C. § 216(b).

## COUNT II

### FAILURE TO PROPERLY CALCULATE THE REGULAR RATE OF PAY FOR PLAINTIFFS BOOKMAN, PETERSON, ALLI AND PREDMORE IN VIOLATION OF SECTION 7 OF THE FLSA

39. Plaintiffs hereby incorporate by reference paragraphs 1 through 38 in their entirety.

40. Section 207(a) of the FLSA, 29 U.S.C. § 207(a), as well as the regulations of the U.S. Department of Labor, 29 CFR Part 778, *et seq.*, require that all forms of remuneration be included in the rate at which FLSA overtime is paid, with some limited exceptions. Defendant has failed to include certain premium payments such as night shift differential pay, vehicle

differential pay, and meal allowance payments, in plaintiffs' regular rates of pay for purposes of computing overtime pay entitlements of plaintiffs Bookman, Peterson, Alli and Predmore. Defendant's failure to include night shift differential pay, vehicle differential pay, meal allowance payments and other forms of additional compensation in plaintiffs' regular rates of pay violates section 7(a) of the FLSA. 29 U.S.C. § 207(a); 29 C.F.R. § 778.207(b). The failure to include night shift differential pay, vehicle differential pay, and meal allowance payments in plaintiffs' regular rates means that when plaintiffs receive paid overtime for working over 40 hours a week, they are paid at a rate that is below the rate mandated by the FLSA.

41. As a result of the defendant's systemic, continuing willful and purposeful violations of the FLSA, there have become due and owing to plaintiffs Bookman, Peterson, Alli and Predmore an amount that has not yet been precisely determined. The employment and work records for the plaintiffs reflecting such ongoing violations are in the exclusive possession, custody and control of defendant and its public agencies so the plaintiffs are unable to state at this time the exact amount owing to them. Defendant is under a duty imposed under the FLSA, 29 U.S.C. § 211(c), and various other statutory and regulatory provisions to maintain and preserve payroll and other employment records with respect to the plaintiffs from which the amount of defendant's liability can be ascertained.

42. Pursuant to 29 U.S.C. § 216(b), plaintiffs are entitled to recover liquidated damages in an amount equal to their back pay damages for the defendant's failure to pay overtime compensation.

43. Plaintiffs are entitled to recover attorneys' fees and costs under 29 U.S.C. § 216(b).

## COUNT III

### FAILURE TO PAY FLSA OVERTIME IN A TIMELY MANNER BY PAYING FOR OVERTIME WEEKS OR EVEN MONTHS AFTER

## PLAINTIFFS BOOKMAN, PETERSON, PREDMORE AND C. SMITH
## HAVE WORKED OVERTIME

44.     Plaintiffs hereby incorporate by reference paragraphs 1 through 43 in their entirety.

45.     The FLSA mandates that overtime compensation be paid on the regular pay day for the period in which such workweek ends. Overtime payments under the FLSA may not be delayed except as reasonably necessary to compute the amount owned, and in no event shall such payments be delayed beyond the next payday after such computation can be made. 29 C.F.R. § 778.106. Defendant has violated these basic principles by delaying overtime payments for plaintiffs Bookman, Peterson, Predmore and C. Smith for working in excess of 40 hours a week by weeks and in some cases months, with such delay not being reasonably necessary to compute calculating plaintiffs' overtime pay, but rather because of a failure by management personnel to approve overtime payments or due to management withholding such payments until the next budgetary quarter.

46.     Defendant's failure to pay plaintiffs Bookman, Peterson, Predmore and C. Smith FLSA overtime pay in a timely manner and its withholding of such overtime payments violates section 7(a) of the FLSA. 29 U.S.C. § 207(a); 29 C.F.R. § 778.106.

47.     As a result of the defendant's systemic, continuing willful and purposeful violations of the FLSA, there have become due and owing to the plaintiffs Bookman, Peterson, Predmore and C. Smith an amount that has not yet been precisely determined. The employment and work records for the plaintiffs reflecting these ongoing violations are in the exclusive possession, custody and control of defendant and its public agencies and the plaintiffs are unable to state at this time the exact amount owing to them for these violations of section 7(a) of the FLSA, 29 U.S.C. § 207(a). Defendant is under a duty imposed under the FLSA, 29 U.S.C. § 211(c), and various other statutory and regulatory provisions to maintain and preserve payroll and other

employment records with respect to the plaintiffs from which the amount of defendant's liability can be ascertained.

48. Pursuant to 29 U.S.C. § 216(b), plaintiffs are entitled to recover liquidated damages in an amount equal to their back pay damages for the defendant's failure to pay overtime compensation.

49. Plaintiffs are entitled to recover attorneys' fees and costs under 29 U.S.C. § 216(b).

## COUNT IV

### FAILURE TO COMPLY WITH THE REQUIREMENT THAT FLSA OVERTIME BE PAID TO PLAINTIFFS BOOKMAN, PETERSON, BROWN, FREIMOUR, LAWTONE-BOWLES, McDONALD, ROSEBORO, M. SMITH, TOBIN AND YOUNG AT THE RATE OF ONE AND ONE-HALF TIMES THE PLAINTIFFS' REGULAR RATES OF PAY

50. Plaintiffs hereby incorporate by reference paragraphs 1 through 49 in their entirety.

51. During the times that plaintiffs Bookman, Peterson, Brown, Freimour, Lawtone-Bowles, McDonald, Roseboro, M. Smith, Tobin and Young have worked pre-approved overtime in excess of 40 hours in a week, as well as occasions in which plaintiffs work pre-approved overtime beyond the budgetary "cap" created by the defendant, defendant regularly provides overtime compensation at the straight time rate for each hour of "voluntary overtime" worked or each hour of overtime worked beyond the "cap." Defendant has done so regardless of whether the overtime hours for which it was compensating the plaintiffs were for work in excess of 40 hours a week.

52. Section 207(o) of the FLSA, 29 U.S.C. § 207(o), permits public agency employers such as defendant to provide compensatory time in lieu of cash overtime to their employees as payment for overtime hours worked, but only provided that certain conditions are met. See 29 U.S.C. § 207(o); 29 C.F.R. §§ 553.20-28. One of the basic requirements is that employees

17

receive compensatory time at the rate of one and one-half hours of compensatory time for each hour of overtime worked. 29 U.S.C. § 207(o)(1). The same is true for cash overtime. 29 U.S.C. § 207(a). Defendant has violated section 7 of the FLSA, 29 U.S.C. §§ 207 by failing and refusing to compensate plaintiffs Bookman, Peterson, Brown, Freimour, Lawtone-Bowles, McDonald, Roseboro, M. Smith, Tobin and Young for their overtime work at the rate of one and one-half times their regular rate of pay for each overtime hour worked – whether compensated in cash or compensatory time – and instead compensating them at the rate of one hour of compensatory time for each hour of overtime worked in workweeks in which they work more than 40 hours.

53. As a result of the defendant's systemic, continuing willful and purposeful violations of the FLSA, there have become due and owing to plaintiffs Bookman, Peterson, Brown, Freimour, Lawtone-Bowles, McDonald, Roseboro, M. Smith, Tobin and Young an amount that has not yet been precisely determined. The employment and work records reflecting these ongoing violations for the plaintiffs are in the exclusive possession, custody and control of defendant and its public agencies and the plaintiffs are unable to state at this time the exact amount owing to them for defendant's violations of section 7(a) of the FLSA, 29 U.S.C. § 207(a). Defendant is under a duty imposed under the FLSA, 29 U.S.C. § 211(c), and various other statutory and regulatory provisions to maintain and preserve payroll and other employment records with respect to the plaintiffs from which the amount of defendant's liability can be ascertained.

54. Pursuant to 29 U.S.C. § 216(b), plaintiffs are entitled to recover liquidated damages in an amount equal to their back pay damages for the defendant's failure to pay overtime compensation.

55. Plaintiffs are entitled to recover attorneys' fees and costs under 29 U.S.C. § 216(b).

## DEMAND FOR A JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiffs hereby demand that their claims be tried before a jury.

## PRAYER FOR RELIEF

WHEREFORE, the plaintiffs pray that this Court:

(a) Enter judgment declaring that the defendant has willfully and wrongfully violated their statutory obligations, and deprived each of the plaintiffs of his and her rights under the FLSA;

(b) Order a complete and accurate accounting of all the compensation to which the plaintiffs are entitled;

(c) Award plaintiffs monetary liquidated damages equal to their unpaid compensation;

(d) Award plaintiffs interest on their unpaid compensation;

(e) Award plaintiffs their reasonable attorneys' fees to be paid by the defendant, and the costs and disbursements of this action; and

(f) Grant such other relief as may be just and proper.

Respectfully submitted,

*/s/ Hillary D. LeBeau*_____
Gregory K. McGillivary
David Ricksecker
Hillary D. LeBeau
WOODLEY & McGILLIVARY LLP
1101 Vermont Ave., N.W.
Suite 1000
Washington, DC 20005
Phone: (202) 833-8855
gkm@wmlaborlaw.com
dr@wmlaborlaw.com

hl@wmlaborlaw.com

*/s/ Hope Pordy* _____
Hope Pordy
SPIVAK LIPTON, LLP
1700 Broadway
Suite 2100
New York, NY  10019
Phone: (212) 765-2100
hpordy@spivaklipton.com